And we will call our second case of today, number 17-2426, if I'm pronouncing it correctly, Jecrois v. Sojak, Mr. Zeman, and Mr. Shapiro. Shapiro or Shapiro? Your Honor, there are two ways to pronounce my last name, each of which are correct. In Philly, we often say Shapiro. That's how I pronounce it. Okay, then you'll be just like Judge Norma Shapiro. Correct. That's a compliment. Thank you. Good morning, Your Honors. May it please the Court. My name is Benjamin Zeman. I'm a Deputy Attorney General from the State of New Jersey, and I represent the defendants in this case. Before I start, I would like to request two minutes for rebuttal. Certainly, Mr. Zeman. Your Honors, the order below should be reversed because these defendants are entitled to qualified immunity. In District of Columbia v. Wesby, which was decided just this past January, the Supreme Court held that a body of relevant case law is usually necessary to clearly establish an officer's lack of probable cause. The District Court ignored that exacting standard because it denied defendants' motion without identifying a single case where an officer and defendant's position did not have probable cause. Instead, the District Court held that the rights not to be falsely arrested and maliciously prosecuted are themselves clearly established, even though the Supreme Court has repeatedly, time and time again, told lower courts not to define constitutional rights at such a high level of generality. Given the information known to these defendants, they had an objectively reasonable basis to believe that Plaintiff did not have the victim's affirmative and freely given consent to the act of penetration. You cited Andrews, where we held the right to be free from arrest or prosecution except on probable cause, and that's clearly established. But Andrews was decided after some Supreme Court cases, was it not? It was, but it didn't cite any Supreme Court case law after Saucio v. Katz in 2001. In fact, I took an opportunity to look at the briefs in that case, not that I want to re-litigate it through this case, but just so I could familiarize myself with it, and the argument for qualified immunity was mentioned once in a footnote, I think in the opposition brief in that case. And so the argument really was not presented in a robust fashion to the court, and what we're doing is placing the issue before the court the exact same way that we did in Mamaro v. New Jersey Division of Child Protection and Permanency, where we're saying that the alleged lack of probable cause in this case is not clearly established. And the evidence before the officers when they applied for this arrest warrant was pretty overwhelming. They had a very detailed statement from this victim where she said time and time again, as this event progressed, I said no to the kissing, I said no to the touching, I said no to the act of penetration. You also have the father's statement. That's correct. Where he said that she told him, I let him do it. Right, which I think these officers in this case could reasonably read as an act of self-preservation, especially when she lost a physical battle to remove her pants. I would note that these case law in this circuit allows for officers to reach a probable cause determination based on the statement of a single victim, and that's exactly what we have here. The complaint is really plastered with 30 plus paragraphs with quotes from this victim in an attempt to show that she was somehow inconsistent throughout her three different, what plaintiffs call versions of her statement. But what the actual interview transcript shows is that you have it, it reads almost like a deposition in the sense that it starts off with a really broad question, tell me what happened, oh, by the way, I never met you before, so we're just getting acquainted. And then the officer goes back and drills down on some details, and then he leaves the room and comes back and brings in a sexual assault doll so that he can actually visualize what she's saying. A lot of this comes down to MTS, what it requires. Correct. And in effect what the affidavit was that he submitted. Correct. Sojak et al. So what's it telling me about MTS? So MTS is very straightforward. All it says is, very point blank, any act of sexual penetration engaged in by the defendant without the affirmative and freely given permission of the victim constitutes the offense of sexual assault, period. That's it. There's no extrinsic force that's required. And this was raised before the district court. MTS was brought to his attention. Absolutely. And he ignored it. I wouldn't say ignored. I think the district court took an unreasonable read of that opinion. What Plaintiff is basically saying, and I can't figure out for the life of me how he reads this case this way, but what he basically is saying is that there are two different versions of sexual assault in New Jersey, one with extrinsic force and one with just lack of consent. And because we relied on the extrinsic force version before, we somehow can't rely on that now. But MTS doesn't say anything about any of those theories being mutually exclusive. It says, just very straightforward, any act of penetration without consent is sexual assault, period. And just as a matter of Fourth Amendment jurisprudence, I would direct the court's attention to Wren v. United States, which we cited in our reply brief. I'm going to quote from this, the fact that the officer does not have the state of mind which is hypothecated by the reasons that give him the legal justification for his action does not invalidate his action. So in other words, he didn't need to have what Plaintiff calls the lack of consent version on his mind as long as the facts viewed objectively justify that. And that's exactly what we have here. Do you know if the issuing court ever saw or heard this digitally recorded interview that was referred to? It's unclear, but what I would say to that is that the issuing court is not the defendant in this case. At the end of the day, these officers are the ones whose knowledge is being brought into issue by the Plaintiff. And what we're doing is we're saying, well, let's look at Franks. What is Franks really designed to do? Franks is really designed to show us exactly what these officers knew at the time that they allegedly violated the Fourth Amendment, either committed an arrest or a seizure or a search without probable cause, and see whether, in fact, what they had really did truly amount to probable cause. And what we're saying is we look at this statement. It's clearly cited in the complaint warrant. So it's very clear that these officers were relying on it when they applied for the complaint warrant. And that's it. There's probable cause based on her statement alone. And it's certainly not clearly established. I mean, the Plaintiff hasn't pointed to any case law factually analogous to the situation where an officer was found not to have probable cause. I would note, just so that we brought this up in our reply, the district court really was frustrated with the fact that there wasn't a super long arrest warrant affidavit that was presented to it. In New Jersey, you don't need a separate affidavit. The complaint warrant in this case is the affidavit. It can be combined into one document. The court rules bear that out that we cited in our reply brief. I just would also note, I think the district court was looking at some of the cases, like Weedy and Dempsey and Andrews, which all had much longer affidavits. Those were much more complicated criminal matters. I think Dempsey, there were like 12 victim interviews, and this is just there were two people who the police interviewed in this case. So, factually speaking, it's a much less complicated case, which explains why there's not this robust laying out of the entire procedural history, or investigative history, rather. I would just also note the three cases that I mentioned, Weedy, Dempsey, and Andrews, all arose out of Pennsylvania criminal matters. Pennsylvania does not have a condensed complaint warrant procedure the way that New Jersey does. Andrews came after the arrest, right? Both Andrews and Dempsey came after the arrest. Actually, Andrews and Dempsey came after we even moved to dismiss. There was some discussion about that in the district court about what cases we cited and what cases we didn't. Those two cases had not been decided when we initially moved to dismiss. What about the reconstruction of the terms in the complaint as to exactly what happened, particularly with the holding the arms and all of that? For reconstruction purposes, I think all the court has to do is strike the last eight words of the complaint warrant. How it would read at that point, the last sentence is, the defendant then forcibly pulls down her pants and inserts his penis into her vagina against her will, period. That is probably the cause for sexual assault in New Jersey because all you need is lack of consent. It's certainly not clearly established that that is not enough in and of itself. Plaintiff, again, as I reiterated before, and I noted in my opening with District of Columbia v. Wesby, plaintiff really hasn't pointed to any case law factually analogous to this situation where a court has held that these officers lacked probable cause. On that basis alone, I think the court should reverse. I understand the district court left open or did he not leave open the possibility that he would reconsider this as time went on? The district court left open the possibility that if we were to, I guess, find out what Judge Isabella knew when he signed the arrest warrant, we would then be able to figure out, look at her statement, see if it was presented to the judge or not. But again, I take issue with that because at the end of the day, it is these officers who are the defendants in this case. They're the ones whose knowledge is being put into issue, and they have to be able to rely on this statement to defend themselves. What the judge knew is really, it's actually somewhat beside the point because the whole Frank's analysis is based on a hypothetical corrected affidavit that by its very nature was never before the issue in judge in the first place. What plaintiff necessarily is doing is relying on information from beyond the four corners of that document to attack its credibility. If we're not allowed to rely on the victim's statement, which is cited in the complaint warrant, basically what we're doing is fighting with one hand tied behind our back when it's obvious that that's what they were relying on when they made this arrest. I don't have anything else to add at this point. Judge Isabella, we're done with that. Great, thank you. Thank you. Thank you, Mr. Schapiro. May it please the court, Louis Charles Schapiro for Sammy Jaquan. The question here is, there was more in this complaint warrant than is required under MTS. So if we excise, I think it was a couple of places in the complaint warrant where it talks about holding the victim's arms down, don't you still have probable cause under MTS? I mean, that's a Supreme Court decision from 1992 that hasn't been overruled by the New Jersey authorities. Your Honor, the MTS case doesn't apply because that case, by its own language, talks about a case where force is alleged extrinsic to the act of penetration. The district court read that opinion precisely the way I intended it. And I pointed that out, and the state seems to take issue with it. But what we have here is if you can't just fall into the state's argument, and I understand why they're making this argument. The argument is- You're losing me because MTS made clear that, quote, physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful. That's pretty clear. Right, but that gets to the argument that I was just about to raise, Your Honor. With respect to the state's argument that they could theoretically have charged my client with any potential crime under the sun, even though he wasn't charged with it. He was only charged, as far as we know from this record, with one count of second-degree sexual assault. The lack of affirmative consent and coercion theory of sexual assault that the state alleges here, there's no evidence in the record that that was contemplated by Detective Sojak. The only thing we can surmise is that that theory was perhaps invented in the solace of a lawyer's office after this complaint came in. One can also say the same thing, I suspect, about the fourth-degree criminal sexual contact. But what we have here, Your Honor, is a version of facts which bears no relationship whatsoever in terms of the level of violence that's alleged in the complaint. The arrest warrant, I should say. There's no temporal nexus alleged by this alleged victim, S.S.D., that goes with the act. But she clearly made complaints and made statements to the officer. I mean, this is one of those cases where usually what you and I see is the officer castigated because he didn't file a complaint. Here the officer does and he's whipsawed because the complaint was later dropped. Got it. But at that time, if we excise from the complaint warrant the point about holding arms down, doesn't MTS say that there's enough force by the act of penetration that we don't have to show anymore? I don't understand how you're getting around MTS. I get around MTS by suggesting that the State's reliance on the Barna decision is incorrect because the State relies on the Barna decision, which I believe was from 1994, which suggests that as long as there was probable cause for any crime that could be charged, the defendant is entitled to qualified immunity. If you actually go deeper into that Barna case, what it says, it talks about a gentleman who filed a complaint who said that a false impression was given of him to other law enforcement officers because he supposedly was accused of holding his children in a hostage situation. What's interesting, if you read a little bit further in that case, the police actually had probable cause to arrest him and did arrest him on an aggravated assault charge because he supposedly brandished a weapon in response to police action. So clearly, in that situation, there's probable cause to arrest him on a second offense. So are you saying that this 1994 case with Barna, is that it? Barna. Barna. The State relies on Barna. Somehow changes the 1992 case of MTS? Your Honor, I'm suggesting that you never even get to the MTS analysis because Mr. Chakwa was only charged with one offense. As the District Court pointed out in its opinion, relying on Dempsey, you can only get by the qualified immunity analysis if it can be shown that there was probable cause for one of the offenses that the plaintiff was actually charged with. Here we have a most unusual situation. I suppose that you have somebody charged with only one count of second-degree sexual assault. So it takes it out of the State's theory of relying on Barna, and you don't even get to the MTS analysis. Because Dempsey, I think, kind of blows the MTS. But doesn't Garron in 03 basically reinforce exactly what the court said 11 years earlier in MTS? Which case is that, Your Honor? Garron, G-A-R-R-O-N, 827 Atlantic 2nd, 243. I apologize, I'm not familiar with that case, Your Honor. Basically, it said that New Jersey courts have consistently applied MTS's definition of fiscal force even where the State did allege some force extrinsic to the act of penetration. So here's the question, Your Honor. If that is Judge Alban, or Chief Judge Alban, in dissent, but nobody has ever questioned MTS in New Jersey. That's the law that exists, and that's what the officers are looking at. But that's not what they charged him with. What did they charge him with? They charged him with a sinister-sounding violent assault where the act of holding down the alleged victim's arms was done at the same time as the alleged act of penetration. And that's not what this alleged victim told this detective. But doesn't MTS allow that? It does, Your Honor, because as Dempsey, the court's decision from just a couple of years ago, tells us, you don't even get to the end. I'm paraphrasing a little bit, but in my analysis, you don't get to the MTS analysis because Dempsey actually, there's a passage in Dempsey. Well, Dempsey says, the police may rely on the credible report of a single person, including the victim, to establish probable cause. It also says, Your Honor, that if there are substantial doubts about that probable cause, then that may go the other way. Now, here's an interesting thing about that. The state constantly tells us that we should look at probable causes. I think Judge Ferguson was right in here. No, no. Tell me the substantial doubts that were known to the police officer at the time. Probable cause has to be looked at from a common sense standpoint in the totality of the circumstances. You have an alleged victim telling slightly different things at different times. I disagree respectfully with the state's characterization of the interview, but that's not really for here or there. But if we're looking at it from a common sense approach and there was probable cause based on what the alleged victim was telling Detective Sojak, there wouldn't have been any need for Detective Sojak to do anything but play it straight to Judge Isabella in preparing that arrest warrant. And the arrest warrant bore very little resemblance to what she was telling Detective Sojak. If he didn't entertain any doubts, he would have just written it up the way she said it happened. There would be no need to make it seem far more sinister. He doesn't have to put all the facts in that complaint, does he, or the request for the warrant? Well, Your Honor, certainly a probable cause statement would have been a little bit helpful. But he doesn't have to put in all the things about where she met him and where they went and all that stuff. I suppose those details, we don't need to have all those details in there, but as we've seen from some of the other cases that have been discussed, you have a much more detailed affidavit in some of these other cases that this Court has decided. What you can't do... I bet there are not very many complaints like that now with a lot of detail to the judge who issues warrants. And in this case, we have a complaint warrant with maybe five or six lines, a couple paragraphs, and at least half of it, perhaps more, is false. All you have to say is this complainant said that this man had sex with her against her will. That's a rape. That's not what happened here, Your Honor. I understand, but she said it was against her will. Said it was against her will, but if he had probable cause and didn't entertain any serious doubts about whether he had probable cause, he would have just written it up that way. And I wanted to address... What should the officer have done here? The officer should have played it straight. No, no, I mean... Should have misrepresented the facts to a Superior Court judge, Your Honor. Okay, if you take the arms down out, and that's why I keep coming back to MTS, that's enough force to give you probable cause to charge in most cases. And you're telling me that somehow it's distinguished in light of a decision we wrote in Dempsey, which I don't quite understand, but... You're the officer in this case. What would you do? Don't give me the legal... What would you do? I would take a little bit more time than just running to a Superior Court judge the same day. That's what I would have done. I would have investigated a little bit. There's no suggestion that there was any investigation done. How long was the... From the time of the incident until the complaint warrant was filed was how long? About a day, about 24 hours. They arrested him, I believe, the next day on his campus and threw him in the Hudson County Jail for three weeks, and then dismissed his case. Okay. It was basically, as far as we can tell, and for purposes of this motion, there was no outside investigation except maybe talking to the father and the boyfriend on a three-way call. I wanted to address something that Mr. Zeman mentioned about what Judge Isabella had before him and what he didn't have before him. Judge Vasquez at the district court level was very troubled by that, and it was said here, I believe, a few moments ago that it wasn't quite clear what he had before him. The state conceded for purposes of this motion that Judge Isabella had nothing before him except for this arrest warrant. Did not have the video, did not have any testimony, nothing. So the only thing for purposes of this motion, it's been conceded, that all Judge Isabella had was this rubber stamp arrest warrant, which is materially false, and there's no resemblance to what the victim said. I wanted to also focus on the clearly established right. The state would have you believe that I haven't provided any specific description or citation to case law about what the clearly established right is. I have three words for the state, and I have three words for Your Honor. Read the complaint, because at paragraph 117 of the complaint, I cite specifically the Lee Pei versus Christos case, which says, the right to be free from arrest based on a warrant grounded on a law enforcement officer's representations or omissions made in reckless disregard of the truth was a clearly established right at the time of plaintiff's arrest, thus not entitling an officer to qualified immunity. I also cited a number of cases in my brief which should have made this issue abundantly clear. As a law enforcement officer, you get all kinds of immunity. One of the things that you can't do is you can't misrepresent facts to a judge. Everybody with a thinking brain ought to know that. And it's even placed right in my complaint so that an enterprising attorney like Mr. Zeman would not file a motion suggesting that I wasn't clear about what the clearly established right is. I was very clear about what that is, and anybody should be able to tell that as a law enforcement officer. Is your main complaint the fact that the officer didn't put enough in there or the fact that he put something in there that was false? My main argument, Your Honor, is that he put something in there that was materially false. What was that? That there was a temporal nexus that my client allegedly held down the victim while at the same time inserting his penis, which paints a portrait of a much more sinister type of offense. And one of the reasons that you do something like that, if you're a law enforcement officer, knowing that a judge is going to read it, is to make it look like, okay, this is a pretty serious case. I better put a high bail on this. And that's exactly what they did. He did hold her down, but not in that sequence, right? It's not even holding down. As the alleged victim describes it, Your Honor, before there's ever an act of penetration, even taking the victim's statement at face value, there's a holding down of someone's pants, of her pants. But it's not concurrent with the act of penetration. What you see in Detective Sojak's warrant is an order of magnitude beyond what she described. And in that sense, he's describing a violent sexual assault, and he's not describing the MTS version, which, from what we can tell from this record, was not contemplated. It was only, I believe, thought up later after the fact. If Your Honors have any further questions. Thank you very much. Thank you, Your Honor. Did you see me? Thank you, Your Honor. Do you know why the charges ultimately were dropped? I'm sorry? Do you know why the charges were dropped? I'm not aware of that, Your Honor. But I do have three points I just want to make very briefly in the two minutes that I have. First, counsel basically argued that, you know, we need to get into Detective Sojak's head in order to figure out what he was thinking when he made this complaint. He might have entertained doubts about her statement. It's completely irrelevant. The Fourth Amendment is literally, the whole analysis is objective. All this court has to do is read her statement and see that she is not being as inconsistent as plaintiff makes her out to be in the complaint itself. Why did the complaint warrant mention holding the person who made the complaint, her arms down? Honestly, I'm not sure. I do know at the very last page of the statement, it's dated 11-28-14, so we're all looking at this from having read the statement and having gone through it. It's very possible this officer didn't have it in front of him and so may have just made a mistake. We don't know. We've just assumed for purposes of this motion that he mis-equated it and that it satisfies the first prong of Frank's. Where the rubber meets the road in this case is the second prong of Frank's. And I do want to talk about, very briefly, the Lippe case. This court, since Lippe, has essentially treated the second step of Frank's as the first step of qualified immunity. And every single Frank's 1983 case decided since Sherwood v. Mulvihill in 1997 and then Wilson in 2000 and Reedy and Andrews. The court still analyzes probable cause and then goes on to analyze qualified immunity. So Reedy is a perfect example. There's a super long discussion in that case about going through the affidavit and reconstructing it, but then the court still goes on to analyze whether it was clearly established that that warrant did not amount to probable cause. The same thing happened in Andrews, except our break with Andrews is that it defined the rights just simply too generally. I don't have anything else to say. Thank you very much. I appreciate you. Thank you, counsel, for well-presented arguments. And we'll take the matter under advisement in recess.